UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 1:08 CR 195 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| MARK TAYLOR, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Defendant Mark Taylor ("Defendant" or "Taylor"), a felon, is charged with possession of a firearm and ammunition in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). (Indictment, ECF No. 1.) Now pending before the court is Taylor's Motion to Suppress the gun, ammunition, and any statements allegedly Taylor made while in the custody of state or federal law enforcement officers. (ECF No. 24.) The court held a hearing on Defendant's Motion to Suppress on September 11, 2008. (ECF No. 30.) For the reasons set forth below, the court grants Defendant's Motion.

## I. FACTUAL BACKGROUND

On March 26, 2008, after receiving information that Taylor might be found at 1154 Melvyn Lane in Elyria, Ohio, members of the Northern Ohio Violent Fugitive Task Force went there to arrest Taylor on an outstanding state warrant. The officers did not have a search warrant for the residence. The officers knocked on the door and were met by Sabrina Arnett ("Arnett"), who lived at the residence. The officers told Arnett they were looking for Taylor. She gave them oral permission to search the apartment for Defendant, though she initially indicated that he was not

there. Later, she admitted that he was upstairs. The officers then proceeded upstairs and found Defendant in his underwear in the master bedroom. While upstairs, the officers noticed men's clothing in the spare bedroom. The officers handcuffed Defendant and brought him downstairs, where Arnett was located.

Soon thereafter, the officers maintain that Arnett orally consented to a search of the residence and signed a written consent form. According to Officer Gregory Bartoe ("Bartoe") of the Bureau of Alcohol and Tobacco, Firearms, and Explosives ("ATF"), her consent was given upon Bartoe's request to "search the house for any other stuff, because we had seen a marijuana pipe, and we suspected Taylor might have had some weapons because of his history." Arnett maintains she did not voluntarily consent to the search of her residence because the officers caused her to be afraid that she would be evicted if she did not cooperate. While the parties dispute the voluntariness of Arnett's consent, it is undisputed that the officers did not specifically ask Arnett's permission to search any of Taylor's belongings. The officers' search revealed a handgun and ammunition located in a closed shoe box in the closet of the spare bedroom. The closet contained children's clothing, and the closed shoe box itself was covered with men's clothing. In addition to the handgun and ammunition, the shoe box contained Defendant's jail identification bracelet and rap lyrics signed by "M-Dot."

Only after the search was completed, the officers interviewed Arnett and asked Arnett if anyone lived with her. At that time, Arnett confirmed that Defendant kept his belongings in the spare bedroom where the weapon was found. Arnett stated that the officers never asked if Taylor had given her permission to look at his personal belongings. In fact, Arnett maintains that Taylor never gave her permission to open the shoe box.

## II. LAW AND ANALYSIS

### A.  Arnett's Consent

Defendant first maintains that the search was unlawful because Arnett did not voluntarily consent to the officers' search of the residence.  The government correctly notes that whether Arnett voluntarily consented to the search is an issue of fact that must be determined by the totality of the circumstances.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973).  The government must prove by clear and convincing testimony that Arnett's consent was obtained without duress. *United States v. Simmons*, 202 F. App'x 82, 86 (6th Cir. 2006) (citing *United States v. Worley,* 193 F.3d  380, 386 (6th Cir. 1999)).  Factors that the court must  consider in assessing the validity of Arnett's consent include: "the age, intelligence, and education of the individual; whether the individual understands the right to refuse consent; whether the individual understands his constitutional rights; the length and nature of detention; and the use of coercive or punishing conduct by the police." *Id.*

Here, the court does not find anything remarkable or unusual about Arnett's age, intelligence, or education that would suggest that her consent was not voluntarily given. Additionally, the court credits the testimony of the officers that they did not threaten, promise, or coerce Arnett into giving consent. Finally, it is undisputed that Arnett signed a form consenting to the search of the residence. The form advised her of her right to refuse consent and stated she had not been threatened or promised anything in exchange for that consent.  In light of these facts, the court finds that the government has shown by clear and convincing evidence that Arnett voluntarily consented to the search of her residence.

### B. Arnett's Authority to Consent to the Search of Taylor's Belongings

Defendant next maintains that, even if Arnett voluntarily consented to the search of her residence, Arnett did not have actual or apparent authority to consent to the search of Taylor's

-3-

closed shoe box. Both parties maintain that the Sixth Circuit's decision in *United States v. Waller,* 426 F.3d 838 (6th Cir. 2005), is dispositive in the instant case. After reviewing *Waller* and *United States v. Purcell,* 526 F.3d 953, 956 (6th Cir. 2008), a recent Sixth Circuit decision relying upon *Waller*, the court finds that Arnett did not have actual or apparent authority to consent to the search of Taylor's closed shoe box. Accordingly, Defendant's Motion to Suppress is well-taken, and the court grants Defendant's Motion on this ground.

### 1, Actual/Common Authority

The government maintains that it had actual/common authority to search the closed shoe box because Arnett consented to the search of her residence, both orally and in writing. As the Sixth Circuit has recognized, "when the government seeks to justify a warrantless search by proof of voluntary consent, in the absence of proof that consent was given by the defendant, it 'may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *Waller,* 426 F.3d at 845 (quoting *United States v. Matlock,* 415 U.S. 164, 171-72 (1974)). The court in *Waller* explained:

> In describing what constitutes common authority, the Supreme Court explained that "common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property[.]" Rather, the Court said, common authority rests "on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." On this basis, a resident's consent to search his home is not necessarily consent to search a closed object within the home.

*Waller,* 426 F.3d at 845 (citations omitted). The government bears the burden of establishing the effectiveness of a third party's consent. *Waller,* 426 F.3d at 845 (citing *Illinois v. Rodriguez,* 497

U.S. 177, 181 (1990)).

In *Waller,* 426 F.3d at 845-46, Howard consented to a police search of his apartment. The police were looking for items belonging to Waller, Howard's friend, who stored some of his belongings in Howard's apartment. *Id.* After the police obtained Howard's consent to search the apartment, it discovered Waller's luggage in a bedroom closet. The police then searched the luggage and found two firearms. *Id.*

The Sixth Circuit reversed the district court's decision finding that Howard had actual/common authority over Waller's luggage, holding that:

> In this case, it is obvious that Howard, who assented to the search of his apartment in general, did not have common authority specifically with regard to Waller's luggage. The parties held a mutual understanding that the luggage contained Waller's private personal effects. Waller never gave Howard permission to open the luggage bag and Howard never did so. The luggage contained not only the firearms but also personal toiletries used by Waller, who showered in the apartment. On these facts, we conclude that Howard did not have mutual use of the luggage, nor did he have joint access and control for most purposes. Thus, he did not have common authority to grant permission to search Waller's luggage.

*Waller,* 426 F.3d at 845-846.

The *Waller* court cited approvingly to the Ninth Circuit's decision in *Fulz,* 146 F.3d 1102, 1106 (9th Cir. 1998). In *Fulz,* the Ninth Circuit reversed the district court's judgment that a police search of the defendant's closed cardboard boxes, which were located in a neighbor's garage, did not violate the Fourth Amendment. Specifically, the *Fulz* court held that the neighbor had no actual authority to consent to the police search of the defendant's cardboard boxes, which were stored in the neighbor's garage, because "what matters is not whether [the neighbor] had access to the garage, but whether she had mutual use and joint access to or control over the *boxes*." (Emphasis in original.)

Similarly, the Sixth Circuit in *United States v. Purcell,* 526 F.3d 953, 956 (6th Cir. 2008), assumed without deciding that the defendant's girlfriend, Crist, who consented to a police search of her hotel room, did not possess actual authority to consent to the search of the defendant's duffel bag and backpack because: (1) Crist's personal effects were not in the defendant's bags; (2) the defendant exercised exclusive control over the bags; and (3) the defendant never gave Crist permission to open the bags. *Id.*

Here, as in *Waller*, *Fulz,* and *Purcell,* the court finds that Arnett lacked actual authority to consent to the search of Taylor's closed shoe box because: (1) none of Arnett's personal effects were contained in Taylor's shoe box; (2) the evidence shows that Taylor exercised exclusive control over the shoe box; and (3) the evidence shows that Taylor never gave Arnett permission to open the shoe box. The government's attempt to argue that Arnett had actual authority to consent to the search of the closed shoe box because some of Arnett's personal effects were stored in the closet where the shoe box was found is unavailing. Significantly, "what matters is not whether [Arnett] had access to the [closet], but whether she had mutual use and joint access to or control over [*the shoe box*]." *Fulz,* 146 F.3d at 1106. Accordingly, in light of *Waller, Purcell,* and *Fulz,* the court finds that the government did not meet its burden of showing that Arnett had actual authority to consent to the search of Taylor's closed shoe box.

### 2. Apparent Authority

The court must now examine whether, in the absence of Arnett's actual authority to consent to the police search of Taylor's closed shoe box, Arnett had apparent authority to consent to the search. The Sixth Circuit in *Waller* set forth the relevant law with respect to apparent authority:

> When one person consents to a search of property owned by another, the consent is valid if 'the facts available to the officer at the moment . . . warrant a man of

> reasonable caution in the belief that the consenting party had authority over the premises.'" Whether the facts presented at the time of the search would "warrant a man of reasonable caution" to believe the third party has common authority over the property depends upon all of the surrounding circumstances. The government cannot establish that its agents reasonably relied upon a third party's apparent authority "if agents, faced with an ambiguous situation, nevertheless proceed without making further inquiry. If the agents do not learn enough, if the circumstances make it unclear whether the property about to be searched is subject to 'mutual use' by the person giving consent, 'then warrantless entry is unlawful without further inquiry.'" Where the circumstances presented would cause a person of reasonable caution to question whether the third party has mutual use of the property, "warrantless entry without further inquiry is unlawful[.]"

*Waller,* 426 F.3d at 846 (citations omitted).

The *Waller* court concluded that Howard did not have apparent authority to consent to the search of Waller's luggage. *Id.* at 846-47. Specifically, the court held that, when confronted with ambiguity regarding the ownership of the luggage, the police should have made further inquiries before searching the luggage. While the *Waller* court noted that an officer may have reasonably believed that the luggage was under the control of Howard, "the officers did not ask any questions to determine whether Howard had 'mutual use' of the luggage." *Id.* The court noted that "the officers' failure to make further inquiry is especially pronounced in this case because Howard was in the next room when the police found the luggage," and therefore "[i]t would not have been burdensome to have asked Howard whether the luggage belonged to him. ..." *Id.* Tellingly, the Sixth Circuit found that:

> The very purpose of the police presence was to search for (presumably) illegal possessions of Waller's. Why would the police open the suitcase if they reasonably believed it belonged to Howard? The answer is that they would not have opened the bag. They opened the bag precisely because they believed it likely belonged to Waller. The police knew Waller was storing belongings at the Howard apartment. Most people do not keep a packed, closed suitcase in their own apartment. Deliberate ignorance of conclusive ownership of the suitcase does not excuse the warrantless search of the suitcase, especially when actual ownership could easily have been confirmed.

*Id.* Accordingly, the *Waller* court held:

> Inasmuch as we conclude that the circumstances presented here were sufficiently ambiguous to place a reasonable officer on notice of his obligation to make further inquiry prior to conducting a search of the luggage, we hold that the officers' warrantless entry into Waller's luggage without further inquiry was unlawful under the Fourth Amendment.

*Id.*

Similarly, the Sixth Circuit in *Purcell,* relying on *Waller,* also held that Crist lacked apparent authority to consent to the police search of the defendant's bags because, once ambiguity arose regarding the ownership of the bags, the police had the duty to resolve that ambiguity before proceeding with the search. *Purcell,* 526 F.3d at 964. Specifically, the *Purcell* court stated that, once the police found one bag containing men's clothing, the police were on notice that the remaining bags might not belong to Crist, who consented to the search of the bags. *Id.* Therefore, the *Purcell* court stated:

> Once ambiguity erases any apparent authority, it is not difficult for the searching officers to reestablish the would-be-consenter's authority. The options for searching officers are simple: either they may get a warrant, or they may simply ask the would-be-consenter whether he or she possesses the authority to consent to the search of the other items that the officers wish to explore. *See Waller*, 426 F.3d at 849. . . . Although Crist was standing outside the hotel room during the entire search, the agents never asked Crist to clarify her authority over any of the other bags in the room. Therefore, Crist's apparent authority, which justified the search of the first bag, dissipated upon the discovery of the men's clothing and was not reestablished, leaving Crist without apparent authority to consent to the search of the backpack.

*Id.* Moreover, the *Purcell* court stated that the fact that Crist was in a romantic relationship with the defendant did not provide a basis for apparent authority. *Id.* ("Being in an intimate relationship, however, does not endow a would-be-consenter with any additional sheen of apparent authority that would survive the discovery of evidence that contradicts the consenter's asserted authority.").

Here, just as in *Waller* and *Purcell,* the police were on notice that an ambiguity existed

regarding the ownership of the closed shoe box in the spare room because, although the closet contained children's clothing, the spare bedroom contained men's clothing and the shoe box itself was covered with men's clothing. Yet, the police did not take any steps to resolve this ambiguity, although they could easily have asked Arnett or Taylor, who were in the residence during the police search, to clarify Arnett's authority over the shoe box. Therefore, while Arnett's apparent authority may have justified the search of the residence, her apparent authority dissipated upon the discovery of the men's clothing in the spare bedroom and on top of the shoe box. *Purcell,* 526 F.3d at 964. At that point, Arnett was without apparent authority to consent to the search of the closed shoe box. *Id.* The fact that Arnett and Taylor may have been in an intimate relationship did not endow Arnett with an "additional sheen of apparent authority" that survived the discovery of the men's clothing found in the spare bedroom and strewn over the shoe box itself. *Id.*

Moreover, the court in the instant case finds that, like the factual circumstances in *Waller,* the very purpose of the police presence in Arnett's home was to search for Taylor's illegal possessions. The court finds that the police would likely not have opened the closed shoe box if they believed it belonged to Arnett. Rather, ["t]hey opened the [shoe box] precisely because they believed it likely belonged to [Taylor.]" Accordingly, in light of *Waller* and *Purcell,* the court finds that Arnett lacked apparent authority to consent to the search of Taylor's shoe box. In reaching this conclusion, the court finds that this case is unlike *United States v. Cork*, 18 F.App'x 376, 383-84 (6th Cir. 2001), where the court found it reasonable for police officers to believe that the homeowner's consent extended to the shoe box of defendant. Though Defendant's shoe box was not sealed, taped or locked, which was also the case in *Cork*, here the shoe box was not found among other shoe boxes and men's clothing was on top of it. Consequently, the officers had every reason to believe that it

was the property of Defendant.

### III. CONCLUSION

In light of the court's findings that Arnett lacked actual or apparent authority to consent to the search of Taylor's shoe box, the court grants Defendant's Motion to Suppress the gun, ammunition, and any statements Taylor allegedly made while in the custody of state or federal law enforcement officers.  (ECF No. 24.)

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

December 9, 2008